**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff,*
Jack Williams, IV

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK WILLIAMS, IV, individually and on behalf of himself and those similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>VETCOMM US,<br><br>　　　　　　　Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ. (TCPA)**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

////

////

///

- 1 -

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.     Plaintiff JACK WILLIAMS, IV ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit challenging the unlawful actions of VETCOMM US ("Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited text messages to Plaintiff and the putative class on their respective cellular phones which are registered with the National Do-Not Call Registry ("DNC"), all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's unlawful conduct.

2.     Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3.     This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4.     Defendant sent numerous unsolicited text messages to Plaintiff's cellular telephone for the purpose of soliciting business from Plaintiff while Plaintiff's telephone number was registered with the DNC.

5.     Defendant has violated 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200(a)(2) by bombarding consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

6.     The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

7.     Plaintiff seeks an injunction requiring Defendant to cease all unsolicited text messages to numbers on the DNC, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and members of the Class (defined below) per violation, together with court costs, and reasonable attorneys' fees.

**JURISDICTION AND VENUE**

8.     This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

9.     Personal jurisdiction is established because Defendant conduct business in the State of California. At all times relevant herein, Defendant conducted business in the State of California, and within this judicial district.

10.    Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred within this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, while Plaintiff resided in San Juan Capistrano, California, which is within this judicial district.

11.    Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

        a) Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

        b) Defendant does substantial business within this district;

        c) Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and markets within this district; and,

        d) the harm to Plaintiff originated from within this judicial district.

**PARTIES**

12.    Plaintiff is, and at all times mentioned herein is a resident of the State of California, County of Orange.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

13.    Defendant is a California company with its principal place of business located in San Diego, California.

14.    Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

15.    Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Orange, and within this judicial district.

16.    Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

### TCPA BACKGROUND

17.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.    The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. §

1  64.1200(c).[1]

2  20.    In enacting the TCPA, Congress intended to give consumers a choice as to how

3  creditors and telemarketers may call them and made specific findings that

4  "[t]echnologies that might allow consumers to avoid receiving such calls are not

5  universally available, are costly, are unlikely to be enforced, or place an inordinate

6  burden on the consumer."    TCPA, Pub.L. No. 102-243, § 11.    Toward this end,

7  Congress found that:

8         Banning such automated or prerecorded telephone calls to
       the home, except when the receiving party consents to
9      receiving the call or when such calls are necessary in an
       emergency situation affecting the health and safety of the
10     consumer, is the only effective means of protecting telephone
       consumers from this nuisance and privacy invasion.

11

12  *Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL

13  3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's

14  purpose).

15  21.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

16         The Telephone Consumer Protection Act […] is well known
       for its provisions limiting junk-fax transmissions.    A less
17     litigated part of the Act curtails the use of automated dialers
       and prerecorded messages to cell phones, whose subscribers
18     often are billed by the minute as soon as the call is answered
       – and routing a call to voicemail counts as answering the call.
19     An automated call to a landline phone can be an annoyance;
       an automated call to a cell phone adds expense to annoyance.
20

21  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

22  22.    Text messages are calls and are subject to the TCPA.    *See, e.g.*, *Campbell-Ewald*

23  *Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569

24  F.3d 946, 954 (9th Cir. 2009).

25

26  _____

27  [1] According to the Federal Communications Commission's website,
    https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list,
28  Placing telemarketing calls to wireless phones is - and always has been - illegal in
    most cases.

KAZEROUNI
LAW GROUP, APC

23.     47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

24.     47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

25.     As of October 16, 2013, unless the recipient has given prior express written consent,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

• Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

• Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

• Prohibit solicitations to residences that use an artificial voice or a recording.

_____

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

CLASS ACTION COMPLAINT

- • Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- • Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- • Prohibit autodialed calls that engage two or more lines of a multi-line business.

- • Prohibit unsolicited advertising faxes.

- • Prohibit certain calls to members of the DNC.

26.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

27.    With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this one additional call

KAZEROUNI
LAW GROUP, APC

1  does not yield actual knowledge of reassignment, we deem the caller to have

2  constructive knowledge of such." *Id.*  Thus, any second call placed to a wrong number

3  violates the TCPA.

4  28.    The TCPA provides for damages in the amount of $500 for each negligent

5  violation and treble damages of $1,500 for each knowing or willful violation. *See* 47

6  U.S.C. § 227(b)(3).

7  <u>**FACTUAL ALLEGATIONS**</u>

8  29.    Defendant is a company that sells courses and offers various services regarding

9  Veterans.

10  30.    In Defendant's overzealous attempt to market its services, however, Defendant

11  willfully or knowingly sent (a) unsolicited telemarketing text messages without the

12  prior express written consent of the recipients and (b) unsolicited telemarketing text

13  messages to persons who have registered their cellular telephone number on the DNC.

14  31.    Through this conduct, Defendant has invaded the privacy of Plaintiff and the

15  members of the Class.

16  32.    At all times relevant, Plaintiff was a citizen of the State of California.  Plaintiff

17  is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. §

18  153(39).

19  33.    Defendant is, and at all times mentioned herein was, a company and a "person,"

20  as defined by 47 U.S.C. § 153(39).

21  34.    At all times relevant Defendant conducted business in the State of California and

22  in the County of Orange, within this judicial district.

23  35.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular

24  telephone number of ending in 6749 ("Cell Phone"). Plaintiff is the sole user and/or

25  subscriber of his Cell Phone.

26  36.    Plaintiff's Cell Phone was registered on the National Do Not Call Registry since

27  on or about January 28, 2013.

28  37.    Defendant has sent numerous text message solicitations to Plaintiff on his Cell

Phone,[3] between approximately February 28, 2024, and June 25, 2024, from Defendant's telephone number, (760) 309-7100 (the "Telephone Number").

38.     On February 28, 2024, at approximately 2:56 P.M., (the "February 28 Texts"), Defendant sent a text message to the Plaintiff's Cell Phone from the telephone number (760) 309-7100 (the "Phone Number") in which Defendant claimed to be someone named Susan. The February 28 text from Defendant begins to advertise its services, asking Plaintiff to consider their "FREE Disability Claim Review." It then goes on to say that Plaintiff was "referred by someone who thinks you need the help."

39.     The February 28 text message then goes on to include two website links that directs to a page on Defendant's website, which further advertised their services, and appears to be where Defendant's call schedule is located. The February 28 text message states, "If you have time right now, please text 'CALLME', and I will call You ASAP" which is then signed off by Defendant's employee, "Susan Felix, Conversion Specialist" which includes Susan's email and a phone number.

40.     A week later, on March 6, 2024, (the "March 6 Text"), Defendant sent another text message to Plaintiff's Cell Phone from the Telephone Number promoting its services with two links to Defendant's website.

41.     On March 13, 2024, at approximately 2:27 P.M., (the "March 13 Text"), Defendant sent a text message to the Plaintiff's Cell Phone from the Telephone Number advertising its services and states "I am following up on our previous messages to emphasize our commitment to assisting Gulf War Veterans in securing their deserved VA Benefits." The March 13 Text also included two links to Defendant's website that further advertises their services and ends with Susan Felix's email and phone number.

42.     On March 15, 2024, at approximately 3:22 P.M., (the "March 15 Texts"),

_____

[3] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

Defendant sent a text message to Plaintiff's Cell Phone from the Telephone Number advertising its services stating, "Let us HELP you!".

43.    On April 11, 2024, at approximately 9:30 A.M., (the "April 11 Text"), Defendant sent another text message to the Plaintiff's Cell Phone from the Telephone Number advertising its services by stating, "Veterans, Get YOUR Benefits NOW before 2024 changes take place" and follows up with two links to Defendant's website.

44.    The April 11 Text ends with a signory of "The VetComm Team" with their phone number and a link to Defendant's website.

45.    On April 18, 2024, at approximately 11:23 A.M., (the "April 18 Text"), Defendant sent a text message to the Plaintiff's Cell Phone from the Telephone Number stating "REAL Unpaid Veteran Testimonials who filed their VA disability with VETCOMM:" followed with three links to Defendant's website further advertising its services.

46.    On May 10, 2024, at approximately 11:28 A.M., (the "May 10 Text"), Defendant sent a text message to the Plaintiff's Cell Phone from the Telephone Number stating "Act NOW or LOSE OUT! Digestive disability changes explained here!" followed up with two links to Defendant's website further advertising its services.

47.    On May 17, 2024, at approximately 10:50 A.M., (the "May 17 Text"), Defendant sent a text message to the Plaintiff's Cell Phone from the Telephone Number. The text states, "The VA is STEALING YOUR MONEY!" and follows up with more advertisements for its services, "11 Million Dollars in bonuses paid to executives instead of you- You have to watch this!" and "Stand with us and don't remain forgotten- Schedule your FREE assessment here:" and includes two links to Defendant's website.

48.    On May 24, 2024, at approximately 12:51 P.M., (the "May 24 Texts"), Defendant sent a text message plus an image to the Plaintiff's Cell Phone from the Telephone Number stating, "This will really PISS YOU OFF, Either at Judge Judy or at YOURSELF! You tell me after watching this!" with a link to a video and continues

with another link advertising Defendant's services stating, "Why haven't you answered us? Stop waiting and START RATING!"

49. On May 29, 2024, at approximately 11:52 A.M., (the "May 29 Text"), Defendant sent a text message from the Telephone Number saying "VETERANS, are you suffering in silence from Depression, Anxiety, or PTSD? Symptoms may include checking and rechecking your doors at night, trouble sleeping, constant worry or low sex drive….The VA is once again making changes to how mental health is rated," and continues to advertise its services with two links to Defendant's website.

50. On June 6, at approximately 10:02 A.M., (the "June 6 Text"), Defendant sent a text message from the Telephone Number saying "VETERANS, here is how we service connect mental health when helping you make your claim! You are NOT ALONE, We are here every step of the way." Defendant then goes on it advertise its services with two links to Defendant's website where people can "Schedule a 15-minute claims assessment with our team."

51. On June 12, at approximately 11:23 A.M., (the "June 12 Text"), Defendant sent a text message from the Telephone Number saying "You're losing life-changing money every day by waiting to get rated! Be our next success story!" Defendant then goes on it advertise its services with two links to Defendant's website where people can "Schedule a 15-minute claims assessment with our expert team."

52. On June 25, at approximately 2:56 P.M., (the "June 25 Text"), Defendant sent a text message from the Telephone Number saying "What is the reason you have chosen to not respond to our many attempts to help you? You weren't afraid to fight and defend our country, but can't take time to take care of yourself? Doesn't seem right!" and follows up with "Fear of failure is real, procrastination is real but so are the benefits and money we are trying to help you get." Defendant then goes on it advertise its services with a links to Defendant's website where people can "Schedule an appointment and stop this cycle."

53. At no point did the Plaintiff provide prior express consent for any of the text

messages that Defendant sent Plaintiff.

54.     Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

55.     Plaintiff's Cell Phone number was on the DNC since January 28, 2013.

56.     Plaintiff received numerous telephone solicitations from Defendant within a 12-month period within the four years prior to the filing of the Complaint, and more than 31 days after his Cell Phone registration on the DNC.

57.     Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to message his Cell Phone.

58.     Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

59.     Plaintiff did not have a personal relationship with Defendant at any point in time.

60.     Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to message Plaintiff's cellular telephone for marketing or solicitation purposes.

61.     The text message Defendant sent to Plaintiff consisted of a pre-written template of impersonal text and were identical to text messages Defendant sent to other consumers.

62.     Upon information and belief, Defendant sent substantially similar, if not identical, unsolicited messages *en masse* to Plaintiff and thousands of other consumers who were also registered with the DNC for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

63.     Defendant sent numerous unsolicited text messages to Plaintiff to his Cell Phone which was registered with the DNC for at least 31 days prior to these unsolicited text messages, in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

64.     Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5),

including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

65.    Defendant did not send the text messages for an emergency purpose.

66.    Upon information and belief, Defendant did not make the telephone solicitations in error.

67.    Each of the above unsolicited telephonic communications by Defendant and/or their agents violated 47 U.S.C. § 227(b)(1).

68.    Receiving Defendant's unauthorized messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on his phone and battery.

69.    Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

70.    Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or their agents continued to send unsolicited and unauthorized text messages to Plaintiff's cellular telephone.

71.    Defendant's telephonic communications forced Plaintiff to be deprived of the privacy and utility of his cellular phone by forcing Plaintiff to ignore or reject Defendant's disruptive messages, dismiss alerts, and/or silence his cellular phone as a result of Defendant's incessant telephone solicitations.

72.    The TCPA was intended to give individuals control over how and where they receive telephonic communications.  When Defendant sent the text messages to Plaintiff without his consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

73.    Defendant's violations caused Plaintiffs to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc*., No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va.

June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

74.    Through the aforementioned conduct, Defendant each repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

## STANDING

75.    Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *The "Injury in Fact" Prong*

76.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

77.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent a telephone solicitation to Plaintiff's cellular telephone. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

78.    For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543.  In this case, Defendant invaded Plaintiff's privacy and peace by texting his cellular telephone, despite Plaintiff's registering his telephone number with the DNC.  Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time opening

and reading the text message. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

***The "Traceable to the Conduct of Defendant" Prong***

79.    The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

80.    The above-mentioned text messages were directly and explicitly linked to Defendant. Defendant's text message expressly identified itself, Vetcomm US, as the sender to the text messages. These text messages are the sole source of Plaintiff's and the Class's injuries and directly traceable to Defendant. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendants.

***The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong***

81.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

82.    In the present case, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each text message made by Defendant and telephone calls to cellular numbers on the DNC, as authorized by statute in 47 U.S.C. § 227. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

83.    Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

**<u>CLASS ACTION ALLEGATIONS</u>**

84.    Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined is follows:

All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendants, (4) for the purpose of promoting Defendants' goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

85.     Excluded from the Class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

86.     Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

87.     Further, Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the DNC, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class.  Plaintiff and the Class members were damaged thereby.

88.     <u>Numerosity</u>: Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. The exact number of the members of the Class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of Class members nationwide during the Class Period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

89.     <u>Ascertainability</u>: The members of the Class are ascertainable because the Class is defined by reference to objective criteria. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers,

1  names and addresses can be identified in business records maintained by Defendant
2  and/or by third parties.

3  90.    <u>Typicality</u>: As a person who received numerous telephone solicitations from
4  Defendant within a 12-month period, who did not have an established business
5  relationship or personal relationship with Defendant, and who did not provide
6  Defendant prior express invitation or permission to receive telephone solicitations,
7  Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and
8  adequately represent and protect the interests of the Class in that Plaintiff has no
9  interests antagonistic to any member of the Class.

10  91.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff
11  has had to suffer the burden and invasion of privacy of receiving unsolicited text
12  messages to his cellular telephone from Defendant while his number was registered on
13  the National Do Not Call Registry. Thus, his injuries are typical to Class Members.

14  92.    Plaintiff's claims, and the claims of the members of the Class, originate from the
15  same conduct, practice and procedure on the part of Defendant.

16  93.    Plaintiff's claims are based on the same theories, as are the claims of the
17  members of the Class.

18  94.    Plaintiff and Class Members were harmed by the acts of Defendant in at least
19  the following ways: Defendant harassed Plaintiff and Class Members by illegally
20  texting their cellular phones without prior express consent while they were registered
21  on the National Do Not Call Registry. Plaintiff and the Class were damaged thereby.

22  95.    <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the
23  interests of the members of the Class with whom he is similarly situated, as
24  demonstrated herein. Plaintiff acknowledges that he has an obligation to make known
25  to the Court any relationships, conflicts, or differences with any Class Member.
26  Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the
27  interests of the members of the Class. Plaintiff will vigorously pursue the claims of the
28  members of the Class. Plaintiff has retained counsel experienced and competent in class

CLASS ACTION COMPLAINT

action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

96.    Predominance: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

97.    Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

a.    What is Defendant's conduct, patterns, and practices as it pertains to delivering advertisement and telemarketing text messages;

b.    Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message to the members of the Class whose telephone numbers were on the DNC;

c.    Whether Defendant' conduct violated the TCPA;

d.    Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

e.    Whether Defendant should be enjoined from engaging in such conduct in the future.

98.    Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

•    If brought and prosecuted individually, the claims of the members of the

1    Class would require proof of the same material and substantive facts.

2    •    The pursuit of separate actions by individual members of the Class would,

3    as a practical matter, be dispositive of the interests of other members of the Class,

4    and could substantially impair or impede their ability to protect their interests.

5    •    The pursuit of separate actions by individual members of the Class could

6    create a risk of inconsistent or varying adjudications, which might establish

7    incompatible standards of conduct for Defendant.

8    •    These varying adjudications and incompatible standards of conduct, in

9    connection with presentation of the same essential facts, proof, and legal

10   theories, could also create and allow the existence of inconsistent and

11   incompatible rights within the Class.

12   •    The damages suffered by each individual member of the Class may be

13   relatively modest, thus, the expense and burden to litigate each of their claims

14   individually make it difficult for the members of the Class to redress the wrongs

15   done to them.

16   •    Absent a class action, most Class Members would likely find the cost of

17   litigating their claims prohibitively high and would therefore have no effective

18   remedy at law.

19   •    The pursuit of Plaintiff's claims, and the claims of the members of the

20   Class, in one forum will achieve efficiency and promote judicial economy.

21   •    There will be little difficulty in the management of this action as a class

22   action.

23   99.    Defendant have acted or refused to act on grounds generally applicable to the

24   members of the Class, making final declaratory or injunctive relief appropriate.

25   100.    Plaintiff and the members of the Class have all suffered irreparable harm as a

26   result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the

27   Class will continue to face the potential for irreparable harm.  In addition, these

28   violations of law will be allowed to proceed without remedy and Defendant will likely

1  continue such illegal conduct. Because of the size of the individual Class member's
2  claims, few, if any, Class members could afford to seek legal redress for the wrongs
3  complained of herein.

4  101.  A class action is a superior method for the fair and efficient adjudication of this
5  controversy. Class-wide damages are essential to induce Defendant to comply with
6  applicable law. The interest of Class members in individually controlling the
7  prosecution of separate claims against Defendant is small because the maximum
8  statutory damages in an individual action for violation of privacy are minimal.
9  Management of these claims is likely to present significantly fewer difficulties than
10 those presented in many class claims.

11 102.  Plaintiff and the Class Members have all suffered and will continue to suffer
12 harm and damages as a result of Defendant' unlawful conduct.

13 103.  This suit seeks only damages and injunctive relief for recovery of economic
14 injury on behalf of Class Members and it expressly is not intended to request any
15 recovery for personal injury and claims related thereto.

16                                    **COUNT I**

17 **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT REGARDING**
18                         **47 U.S.C. §§ 227, *ET SEQ.***

19              ***(On Behalf of Plaintiffs and the National Do Not Call Registry Class)***

20 104.  Plaintiff re-alleges and incorporates by reference each preceding paragraph as
21 though fully set forth herein.

22 105.  The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that
23 "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential
24 telephone subscriber who has registered his or her telephone number on the national
25 do-not-call registry of persons who do not wish to receive telephone solicitations that
26 is maintained by the federal government."

27 106.  47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any
28 person or entity making telephone solicitations or telemarketing calls to wireless

KAZEROUNI
LAW GROUP, APC

telephone numbers."[4]

107.  47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

108.  Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

109.  Plaintiff and members of the Class received more than one marketing text message within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

110.  The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*., including implementing regulation 47 C.F.R. § 64.1200(c).

111.  Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the National Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

112.  Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and members of the

---

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03- 153A1.pdf

KAZEROUNI
LAW GROUP, APC

National Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

113.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

114.    Defendant sent unsolicited and unauthorized text messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

115.    Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

116.    Defendant willfully or knowingly allowed text messages to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

117.    Defendant's text messages caused Plaintiff and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

118.    Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to 47 U.S.C. § 227(c)(5). of the TCPA.

119.    As a result of Defendant's conduct as alleged herein, Plaintiff and class members, are entitled, *inter alia*, to receive up to $500 in statutory damages under

KAZEROUNI
LAW GROUP, APC

1  section 47 U.S.C. § 227(c)(5) for each and every such violation of 47 C.F.R. § 64.1200.

2  120.  To the extent Defendant's misconduct is determined to be knowing and/or

3  willful, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

4  statutory damages recoverable by the members of the Class, and award Plaintiff and

5  other similarly situated Class members of $1,500.00 in statutory damages, for each and

6  every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

7  121.  Plaintiff and the Class members are also entitled to and seek injunctive relief

8  prohibiting such conduct in the future.

9  122.  Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff

10  and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(c)(5).

- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant's willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(c)(5).

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper

KAZEROUNI
LAW GROUP, APC

1

## **DEMAND FOR JURY TRIAL**

2  123.   Plaintiff, individually and on behalf of the Class, demands a jury trial on all

3  issues so triable.

4

Dated: August 26, 2024                           Respectfully submitted,

5
                                                 **KAZEROUNI LAW GROUP, APC**
6

7                                        By: ____*/s/ Gustavo Ponce*_____
                                                 David J. McGlothlin, Esq.
8                                                Mona Amini, Esq.
                                                 Gustavo Ponce, Esq.
9                                                *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -